In the Matter of A. R. GUNDRY, INC., Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, May 19, 1977

*Middleton-Wilson (Robert E. Brown* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Nigel G. Wright* and *Ruth Kessler Toch* of counsel), for respondent.

KOREMAN, P. J. Petitioner is a New York corporation engaged in the business of transporting petroleum products. Since 1951, it has paid a highway use tax for its vehicles used in transporting such products. Petitioner has always computed its tax on the gross weight method under section 510 of the Tax Law. The actual mileage traveled by petitioner's trucks on New York highways has been determined consistently, since the inception of the tax, by the use of tariff schedules and mileage used for billing purposes.

From time to time since 1951 petitioner was audited by respondent to determine the correctness of its highway use

tax returns. Respondent never questioned the method by which petitioner calculated the number of miles its vehicles had traveled on New York roads, until an audit dated August 5, 1974. In that audit, respondent for the first time determined the mileage traveled by petitioner's vehicles on the basis of tachograph readings and issued an assessment against petitioner for $42,532.19 for additional highway use tax for the period May, 1970 through March, 1974. The audit was conducted by sampling 50 of petitioner's 120 trucks for the month of July, 1973 and by taking from tachograph readings the actual miles traveled based on daily odometer readings. The sample taken was used by respondent to determine a percentage "error" in reported mileage which was then applied to all of petitioner's reported mileage for the whole audit period. During the sample period the 50 trucks traveled fewer than 310,000 miles while during the audit period of May, 1970 through March, 1974 petitioner's fleet of 120 trucks traveled more than 20 million miles.

Petitioner and respondent have stipulated that if the auditing convention (tachograph readings) applied by respondent is used to determine actual mileage traveled by petitioner's vehicles, the net deficiency for the period covered by the assessment would be $32,104.58 plus interest, and if the auditing convention (tariff schedules and mileage used for billing purposes) applied by petitioner is used to determine actual mileage traveled in the State, there would be no deficiency.

After a series of requests for a formal hearing and the commencement of an article 78 proceeding which was later withdrawn, petitioner submitted to the commission a proposed stipulation of facts upon which the central issue on petitioner's challenge to the assessment could be decided. Respondent commission signed the stipulation of facts and reached a formal decision dated October 22, 1976, sustaining the imposition of the additional highway use tax. The commission determined that the audit had been made on a reasonable basis, and that the use of tariff schedules or records of mileage used for billing purposes by petitioner does not estop the commission from auditing petitioner's records and determining the actual mileage to be used in imposing the highway use tax. The commission also found that the fact that prior returns of petitioner, filed on the basis of tariff schedules and mileage used for billing purposes, were not the subject of an assess-

ment of additional tax due, does not bear on a proper audit and assessment for the period May, 1970 through March, 1974.

We disagree with the determination made by respondent. The commission has issued regulations which specifically govern how a taxpayer should calculate mileage in order to determine highway use tax due, and what records should be kept by the taxpayer for auditing purposes. In regard to determining mileage, respondent has provided that: "Mileage within this State shall be computed on the basis of the actual mileage traveled by each motor vehicle. Such mileage shall be based on speedometer readings, fuel consumption records, map mileage from the point of origin to the point of destination, tariff schedules *or* mileage used for billing purposes, and shall be subject to audit by the State Tax Commission" (20 NYCRR 481.12; emphasis supplied).

In terms of record-keeping, respondent's regulations require that: "Every carrier reporting under the gross weight or unloaded weight method shall keep available speedometer readings, fuel consumption records, maps, mileage or tariff schedules *or* record of mileage used for billing purposes *and used to compute the taxable mileage* (20 NYCRR 483.4; emphasis supplied).

It is obvious that the above regulations provide alternative means by which a taxpayer can calculate mileage and keep records to substantiate the calculation. As a result, it was unfair for respondent to audit petitioner using a different method of calculating mileage than that which petitioner had used during the period of the audit. Petitioner had kept the records necessary to support the method it chose to calculate mileage, and should not be penalized for not having records which it was not required to keep because of the particular permissible method it chose to follow.

Furthermore, respondent's use of tachograph readings prevented petitioner from proving its exempt mileage during the audit period, such as mileage traveled on the New York Thruway (Tax Law, § 501, subd 6) and use of vehicles with a gross weight of 18,000 pounds or less (Tax Law, § 504, subd 4).

"All taxing statutes of doubtful meaning are, we are admonished, to be construed in favor of the taxpayer and against the taxing authority, and the burdens they impose are not to be extended by implication" *(Matter of American Cyanamid &*

*Chem. Corp. v Joseph,* 308 NY 259, 263). Respondent's regulations permit the taxpayer to choose any one of several alternative methods of calculating mileage, and to keep the records necessary to support the method chosen. To permit the respondent to audit a taxpayer's records using a different method than that selected by the taxpayer would compel one subject to the highway use tax to keep all of the different types of records enumerated in respondent's regulations in order to be prepared for any one of the different auditing methods. Article 21 of the Tax Law and the applicable regulations should not be construed to impose such an unreasonable burden upon one subject to the highway use tax.

The determination should be annulled, with costs, and the matter remitted for further proceedings not inconsistent herewith.

HERLIHY, J. (dissenting). A reading of the statute (Tax Law, art 21 [to which all statutory references hereafter refer]) and the resulting rules and regulations (20 NYCRR Art 2) which are not here challenged, suggest, indeed require, that the Tax Commission ascertain as accurately as possible, for purposes of calculating tax due under the chosen one of three alternative methods for computing tax liability (§ 503), the amount of travel on the highway within the State which shall be the basis for the tax due from the petitioner or others so situated.

In the present action the petitioner used tariff schedules and mileage used for billing purposes as records of mileage and contends that the commission is estopped from determining the "actual" mileage in imposing taxes.

There being no issue as to the amount due (see stipulation), the observation by the majority as to the exempted mileage is in no way controlling or entitled to consideration.

The majority opinion states that: "To permit the respondent to audit a taxpayer's records using a different method than that selected by the taxpayer would compel one subject to the highway use tax to keep all of the different types of records enumerated in respondent's regulations in order to be prepared for any one of the different auditing methods. Article 21 of the Tax Law and the applicable regulations should not be construed to impose such an unreasonable burden upon one subject to the highway use tax." It is then concluded: "As a result, it was *unfair* for respondent to audit petitioner using a different method of calculating mileage than that which pe-

titioner had used during the period of the audit." (Emphasis added.)

To so hold unnecessarily restricts the intent and purpose of the statutes and regulations and would prevent the Tax Commission from making a deficiency assessment which here the record supports. An analysis of the laws and regulations supports the interpretation of the commission.

Section 505 provides that tax returns are to be filed each month unless otherwise permitted by the respondent. In this case the issue involves monthly returns and tax payments made pursuant to section 506. Section 507 provides in part as follows: "§ 507. Records. Every carrier subject to this article and every carrier to whom a permit was issued shall keep a complete and accurate daily record which shall show the miles traveled in this state by each vehicular unit and such other information as the tax commission may require."

Section 509 provides in part that the respondent shall have power 1. "[t]o prescribe such methods and means as * * * necessary for checking, verifying and ascertaining the number of miles traveled * * * 2. [t]o prescribe the * * * type of records to be kept by any carrier to the extent necessary to determine liability * * * 5. [t]o request * * * public officials [including the State Police] to cooperate in [enforcement] * * * and 7. [t]o make reasonable rules and regulations". Section 510 authorizes the respondent to determine a tax due when it finds that the tax return is unsatisfactory.

The respondent has promulgated a series of regulations pursuant to its powers enumerated in section 509 in regard to this highway use tax (20 NYCRR 480.1 *et seq.*). (All references to regulations hereinafter are to 20 NYCRR.)

Regulation 481.4 reiterates that the tax is based on mileage and the various regulations relating to the method of determining the appropriate rate for the weight of a vehicle also recite that the rate is multiplied against the "total mileage operated within the State". Regulation 481.12 is set forth in full in the majority decision and it clearly specifies that the mileage is to be "the actual mileage traveled by each motor vehicle". Even the most casual reading of regulation 481.12 does not reasonably suggest that any *one* of the possible records would be appropriate to the exclusion of all others. In any event, the laws and regulations clearly specify that the tax is imposed on actual mileage. Coupling that knowledge with which any taxpayer is chargeable, with the language of

regulation 481.12, prevents exclusive use by a taxpayer of any basis which does not give actual mileage.

Part 483 of the regulations governs "Records". Section 483.1 provides that taxpayers "must maintain an accurate daily record of all operations". Section 483.2 requires that for those taxpayers using the gross weight method of computing tax rate, a daily record containing the following information must be maintained:

"(1) The date of each trip.

"(2) The permit and vehicle numbers.

"(3) The point of origin and destination for each trip.

"(4) The number of round trips each day.

"(5) The *number of miles* traveled laden.

"(6) The *number of miles* traveled empty.

"(7) [name of owner]". (Emphasis added.)

Subdivision (c) of regulation 483.2 requires the taxpayer using the gross weight method to maintain "such records as bills of lading, waybills, freight bills, invoices, shipping orders, dispatch sheets, records of vehicles leased, interchanged or hired, drivers' daily logs or trip sheets". Regulation 483.4 is quoted in part in the majority decision and upon its face it requires that taxpayers using the gross weight method must keep available records used to compute the taxable mileage. It does not in any way specify what records a taxpayer must use to compute mileage and, of course, it relates solely to a taxpayer's election of substantiation insofar as a particular document is used by the taxpayer to compute mileage. The records which are to be kept and utilized are set forth in subdivision (c) of regulation 483.2 and these are all records which relate to the information on a daily manifest or trip record. In regard to the records referred to in regulation 483.4, regulation 483.5 requires that certain receipts be kept as records to establish the mileage exempt for travel on the New York State Thruway.

In any event, if a taxpayer uses the gross weight method and were to report mileage solely on the basis of tariff schedules and mileage used for hauling purposes, the requirement that the mileage reflect all miles traveled would be thwarted. Taxpayers reporting on the gross weight method would thereby avoid mileage not subject to direct billing to customers and not covered by tariff filings. The taxpayer seeks an exemption from the requirement of paying on actual mileage

and assuming the regulations could legally grant such an exemption, the regulations do not admit of such a construction.

The record does exhibit some delay; however, the failure of the petitioner to use actual mileage in its daily manifest or trip records is not simply an inadvertent error requiring any action as to dispensing with penalties.

The determination should be confirmed.

GREENBLOTT, MAIN and LARKIN, JJ., concur with KOREMAN, P. J.; HERLIHY, J., dissents and votes to confirm in an opinion.

Determination annulled, with costs, and matter remitted for further proceedings not inconsistent herewith.